**William A. ADKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 36180.**

Court of Criminal Appeals of Texas.

Dec. 4, 1963.

Rehearing Denied Jan. 22, 1964.

---

Norman W. Black, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Neil McKay, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, life.

The appellant's brief states that he finds no serious fault with the following state-

ment of the facts of the case found in the State's brief.

"The appellant, charged by indictment with the offense of Murder with Malice Aforethought of William Edwin Carter by cutting and stabbing him with a knife, entered a plea of not guilty. Upon a finding of guilty, the jury assessed the Appellant's punishment at confinement in the State Penitentiary for life.

"The deceased and his brother, Allen Carter, owned a house in Houston, Texas, where they lived, and they rented a room to the appellant and another room to Herman Bevil. On the night that the deceased was killed, all four of the men were at the house, as was a woman by the name of Ruby Faye Belen who was deceased at the time of the trial.

"The appellant, who had been convicted and sentenced to serve time in the penitentiary six times previously, had lived at the Carter brothers' house for several years. He and the deceased both were newspaper salesmen.

"Herman Bevil, who had not been working on the day of the death of the deceased, had been around the house all that day and evening. Allen Carter and Ruby Faye Belen were also in the house. The deceased and the appellant had worked on their paper route during the morning hours, and both had returned late in the afternoon. All of the parties except Bevil had been drinking. At about 10:00 p. m., Bevil was in his room watching T.V. and got up and went to the bathroom, close to the kitchen, and found Allen Carter and Ruby Faye sitting in the kitchen. Ruby Faye stated that she thought that the appellant and the deceased were fighting. Bevil pushed open the door to the room where the deceased slept and saw the deceased lying on the bed on his back, with his hands and feet up in the air, and the appellant was standing beside the bed cutting at the deceased. Bevil described the knife which he saw the appellant using and identified State's Exhibit No. 1 as being the same knife. Bevil

heard the deceased say, 'Don't Puddle, don't Puddle, you have done cut me.' The appellant was known by the name 'Puddle'. Bevil then went to the fire station and had a fireman call police officers. As Bevil was returning to the house, he noticed someone with a flashlight in back and there found the officers who had located the deceased lying in a ditch.

"When Homicide Officer I. W. Holmes arrived at the scene, he found that four police officers had already arrived. The deceased was dead, lying face down in a ditch. The deceased had a wound in his chest. No weapon was found on or close to the deceased, but he was carrying a large amount of money in his billfold. Holmes followed a trail of blood leading from the body of the deceased back into the bedroom in the house where the deceased had lived. In the house he found Ruby Faye Belen and Allen Carter very intoxicated. The knife (State's Exhibit No. 1) was located by officers beneath the floor in the bathroom.

"The appellant, testifying in his own behalf, testified that on the day in question he and the deceased had worked at their regular jobs selling papers, that he returned home and found the deceased's brother and Ruby Faye Belen in an intoxicated condition, and that he thereafter prepared supper for them. After supper, he went to a liquor store and bought two quarts of wine, one for himself and one for Allen Carter. He then testified that after he gave the wine to Allen Carter, he went to his bedroom and went to sleep. He was awakened by the deceased and at his request gave him a glass of wine. Thereafter, he said he got up and went to his refrigerator to obtain a glass of ice water. He said that Edwin Carter then came in and jerked the refrigerator door, causing him to lose his balance; and as he turned to brace himself on the icebox, he saw that Edwin Carter had a butcher knife in his hand. He said that Edwin Carter was mashing him between the door and refrigerator and that when he saw the knife in Carter's hand, he became frightened and jerked a knife

from a tray in the icebox and out at Carter. Carter then fell back on the corner of the bed, and appellant said that he placed the knife on top of the refrigerator. Appellant said that he was afraid and could not really explain why he had later hidden the knife he used by throwing it through a hole in the bathroom floor, where it was later recovered by officers.

"Dr. W. W. Coulter, Harris County Pathologist, testified that he performed an autopsy on the body of the deceased. His examination revealed a stab wound eight inches below the collar bone, and a half inch to the right of the midline. The wound was two inches in length and had penetrated the pericardial cavity of the heart, but not the heart itself; it also went through the diaphragm and the upper part of the liver. Two quarts of blood were found in the abdominal cavity. The stab wound had penetrated the body, some six or seven inches. As a result of the stab wound the deceased died from internal hemorrhage and from penetration of the liver.

"State's Exhibit No. 1 was identified by Dr. Coulter as a knife with a blade six or seven inches long and approximately two inches wide. In the opinion of the doctor, such an instrument was calculated to cause death or serious bodily injury.

"On cross-examination, the doctor testified that his examination revealed that the alcoholic content of the blood of the deceased was .181, and indicated that the deceased was intoxicated at the time of his death."

No question is presented save that of the sufficiency of the evidence to sustain the conviction.

The jury resolved the issues of fact raised by the testimony of the appellant against him and the evidence, viewed in the light most favorable to the jury's verdict, is sufficient to sustain the conviction for murder with malice with punishment assessed at life.

The judgment is affirmed.